IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

**NAUTILUS INSURANCE COMPANY,**

    **Plaintiff,**

v.

**FUENMAYOR & LINDA ENTERPRISES LLC DBA ACE FLOOD & INSPECTIONS, MARK BECKERMAN, SCOTT FRANK, and JOSEPH BENNETT,**

    **Defendants.**

**CASE NO.:**

_____/

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, NAUTILUS INSURANCE COMPANY ("Nautilus"), seeks a Declaratory Judgment pursuant to 28 U.S.C. § 2201 against Defendants, FUENMAYOR & LINDA ENTERPRISES LLC DBA ACE FLOOD & INSPECTIONS, MARK BECKERMAN, SCOTT FRANK, and JOSEPH BENNETT, for the purpose of determining a question of actual, immediate controversy among the parties.

**The Parties**

1. At all material times, Nautilus was, and still is, a corporation organized and existing under the laws of the State of Arizona with its principal place of business in Scottsdale, Arizona. Nautilus is eligible to do business and to issue insurance policies in the State of Florida pursuant to the Florida Surplus Lines Law.

2. Upon information and belief, at all material times, Fuenmayor & Linda Enterprises LLC DBA Ace Flood & Inspections ("Ace") was, and still is, a Florida Limited Liability Company with its principal place of business in Hollywood, Florida. Ace is comprised

of two members, Ramon Fuenmayor and Soraya Linda, who are both citizens of the State of Florida who reside in Palm Beach County, Florida.

3. Upon information and belief, at all material times, Mark Beckerman was, and still is, a citizen of the State of Florida who resides in Broward County, Florida.

4. Upon information and belief, at all material times, Scott Frank was, and still is, a citizen of the State of Florida who resides in Broward County, Florida.

5. Upon information and belief, at all material times, Joseph Bennett was, and still is, a citizen of the State of Florida who resides in Broward County, Florida.

**Nature of the Claim**

6. This is an action for Declaratory Judgment pursuant to 28 U.S.C. § 2201 for the purpose of construing and interpreting the terms of an insurance contract and for a determination of the rights and obligations, if any, of the parties arising from the insurance contract.

7. An actual controversy exists among the parties regarding the issue of coverage under the subject insurance policy and the rights and obligations, if any, of the parties arising from the insurance policy.

8. All conditions precedent to filing this action have been performed or have occurred.

**Jurisdiction and Venue**

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and the Defendants and the amount in controversy exceeds $75,000.00, exclusive of interest, attorney's fees, and costs.

10. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District and/or all defendants reside in the State of Florida and at least one defendant resides in this District.

## The Insurance Policy

11. Nautilus issued Policy Number NN387617 ("the Policy") to Ace for the policy period of October 4, 2013 through October 4, 2014. The Policy provides Commercial General Liability Coverage with a $1,000,000 each occurrence limit of liability and Miscellaneous Professional Liability Coverage with a $500,000 each claim limit of liability subject to the terms, conditions, definitions, and exclusions set forth therein. A true and correct copy of the Policy is attached hereto as **Exhibit "A."**

12. The Commercial General Liability Coverage in the Policy is subject to Form CG 00 01 12 04, which provides, in pertinent part, as follows:

> **SECTION I – COVERAGES**
>
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>
> (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and
>
> (2) \*\*\*
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.
>
> b. This insurance applies to "bodily injury" and "property damage" only if:

> (1) The "bodily injury" or "property damage" is caused by an "occurrence that takes place in the "coverage territory"; [and]
>
> (2) The "bodily injury" or "property damage" occurs during the policy period . . . .

(Ex. A at Form CG 00 01 12 04).

13. The Commercial General Liability Coverage under the Policy is subject to the following Designated Professional Services Exclusion:

> THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
>
> **EXCLUSION – DESIGNATED PROFESSIONAL SERVICES**
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> **SCHEDULE**
>
> **Description of Professional Services:**
>
> 1. ANY PROFESSIONAL SERVICE BEING PROVIDED BY OR ON BEHALF OF THE INSURED.
>
> * * *
>
> (If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)
>
> With respect to any professional services shown in the Schedule, the following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**
> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service.

(Ex. A at Form CG 21 16 07 98).

14. The Policy's separate Miscellaneous Professional Liability Coverage Form is subject to Form K101 (11/11) and provides, in pertinent part, as follows:

> THIS IS A CLAIMS MADE AND REPORTED POLICY WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE AND REPORTED TO THE "COMPANY" DURING THE "POLICY PERIOD". THE LIMITS OF LIABILITY SHALL BE REDUCED AND MAY BE COMPLETELY EXHAUSTED BY PAYMENT OF "CLAIM EXPENSES".

- 4 -

\* \* \*

**I.   INSURING AGREEMENT**

The "Company" will pay on behalf of the "insured" any "loss" and "claim expenses" in excess of the deductible not exceeding the Limits of Liability to which this coverage applies that the "insured" shall become legally obligated to pay because of "claims" first made against the "insured" during the "policy period", for "wrongful acts" of an "insured" which occurred on or after the Retroactive Date, provided that:

**1.**   Written notice of such "claim" is received by the "Company" during the "policy period" or within sixty (60) days thereafter; and

**2.**   Prior to the inception date of this policy, no "insured" knew, nor could have reasonably foreseen, that the "wrongful acts" might result in a "claim".

\* \* \*

(Ex. A at Form K101 (11/11)).

15.   The Policy's Miscellaneous Professional Liability Coverage Form includes the following definitions:

**III.   DEFINITIONS**

\* \* \*

B.   "Arising out of" means connected to, incidental to, originating from or growing out of, directly or indirectly resulting from.

C.   "Bodily injury" means bodily injury, sickness or disease sustained by a person, including, but not limited to, death resulting from any of these at any time, emotional distress, mental anguish, or pain and suffering.

D.   "Claim" means:

1. A written demand for "loss" or non-monetary relief against an "insured" because of a "wrongful act";

2. Any "suit".

\* \* \*

F.   "Company" means the insurer identified in the Declarations Page.

G.   "Insured" means:

      1.    The "Named Insured" as listed on the Declarations Page including any partner, director, officer or employee of the "Named Insured" while rendering "professional services" on behalf of the "Named Insured";

      2.    Any former partner, director, officer or employee of the "Named Insured" while rendering "professional services" on behalf of the "Named Insured";

      3.    The estate or legal representatives in the event of death, incompetency, insolvency or bankruptcy of any "insured".

  H.    "Loss" means a monetary and compensatory judgment or award which the "insured" is legally obligated to pay because of any covered "wrongful act", but does not include: punitive or exemplary damages, fines, penalties, the multiplied portion of any judgment or award, or any matter uninsurable under the law pursuant to which this policy will be construed, nor the return of fees or charges for "professional services" rendered or to be rendered.

\* \* \*

  K.    "Policy period" means the time period specified in Item I of the Declarations Page.

  L.    "Professional services" means only those professional services listed in Item III of the Declarations Page as performed by or on behalf of the "Named Insured" for others for a fee or other form of compensation.

\* \* \*

  Q.    "Wrongful act" means any negligent or unintentional breach of duty imposed by law, or "personal injury", committed solely in the rendering of "professional services" by an "insured".

(Ex. A at Form K101 (11/11)).

16. Item III of the Miscellaneous Professional Liability Coverage Part Declarations Page describes Ace's "Professional Services" as "wind mitigation consultant." (Ex. A at Form K002 (01/13)).

17. Coverage under the Policy's Miscellaneous Professional Liability Coverage Form is subject to the following exclusion:

    IV.    **EXCLUSIONS**

> This policy does not apply to any "claim" or "claim expenses" "arising out of" any actual or alleged:
>
> * * *
>
> C.   Any "Bodily injury", or any "property damage".

(Ex. A at Form K101 (11/11)).

18.   The Miscellaneous Professional Liability Coverage Form also includes the following endorsement:

> **PROFESSIONAL SERVICES EXCLUSION**
>
> This endorsement modifies insurance provided under the following:
>
> MISCELLANEOUS PROFESSIONAL LIABILITY COVERAGE PART
>
> In consideration of the premium charged, it is hereby understood and agreed that this policy does not apply to any "claim" and "claim expenses" "arising out of" the actual or alleged rendering or failure to render "professional services" as a(n):
>
> ALL CONSTRUCTION, HOME INSPECTIONS, AND FLOOD ELEVATION SERVICES OTHER THAN WIND MITIGATION INSPECTIONS, REALTY SERVICES OR PROPERTY MANAGEMENT.
>
> All other terms and conditions of this policy remain unchanged.

(Ex. A at Form K207 (12/09)).

## The Underlying Claims

19.   Nautilus first received notice of Mr. Frank's claim by letter dated March 14, 2016. A copy of the March 14, 2016 letter is attached hereto as **Exhibit "B."**

20.   By letter dated March 25, 2016 addressed to Nautilus, Mr. Frank made a demand for the available $1,000,000 limit of liability insurance. A copy of the March 25, 2016 letter is attached hereto as **Exhibit "C."**

21.   In the demand letter, Mr. Frank asserts he contracted with Ace to perform an inspection of his home. (*See* Ex. C).

22.     Mr. Frank alleges that on or about June 7, 2013, Mr. Beckerman conducted an inspection of his home while Mr. Beckerman was working in the course and scope of his employment with Ace.  (*See* Ex. C).

23.     In the demand letter, Mr. Frank alleges that Mr. Beckerman failed to identify in his home inspection report the dangerous risk posed by the home's outdoor tankless water heater.  (*See* Ex. C).

24.     Mr. Frank alleges that on August 15, 2014, his water heater was not working properly, and therefore, he had Mr. Bennett, a local plumber, come to his house to repair the water heater.  (*See* Ex. C).

25.     Mr. Frank further alleges in the demand letter that on August 15, 2014, the tankless water heater exploded and severely injured him.  (*See* Ex. C).

26.     As a result of Mr. Beckerman's and Ace's negligence, Mr. Frank alleges he suffered severe and permanent injuries.  (*See* Ex. C).

27.     In the demand letter, Mr. Frank demanded payment of the $1,000,000 policy limit by Nautilus.  (*See* Ex. C).

28.     Additionally, by letter dated May 23, 2016, Mr. Bennett also made a claim against Ace and Mr. Beckerman as a result of the August 15, 2014 incident.  A copy of the May 23, 2016 letter is attached hereto as **Exhibit "D."**

29.     According to the May 23, 2016 letter, Mr. Bennett also sustained severe injuries as a result of the August 15, 2014 incident.  (*See* Ex. D).

30.     As the named insured under the Policy, Ace is a necessary party to this declaratory judgment action for a determination regarding whether the Policy provides coverage

to it for the claims made and damages sought against it by Mr. Frank and Mr. Bennett as a result of the August 15, 2014 incident.

31.     As a claimant, Mr. Frank has an interest in the outcome of and is a necessary party to this declaratory judgment action for a determination as to whether the Policy provides coverage for his claims for damages against Ace and Mr. Beckerman as a result of the August 15, 2014 incident.

32.     As a claimant, Mr. Bennett has an interest in the outcome of and is a necessary party to this declaratory judgment action for a determination as to whether the Policy provides coverage for his claims for damages against Ace and Mr. Beckerman as a result of the August 15, 2014 incident.

33.     As a potential insured under the Policy, Mr. Beckerman is a necessary party to this declaratory judgment action for a determination regarding whether the Policy provides coverage to him for the claims made and damages sought against him by Mr. Frank and Mr. Bennett as a result of the August 15, 2014 incident.

## COUNT I – DECLARATORY JUDGMENT

34.     Nautilus adopts and incorporates by reference the allegations set forth in paragraphs 1-33 above as though completely and fully set forth herein.

35.     There is an actual, present, and existing controversy among the parties to this action regarding whether coverage is afforded under the Policy for the claims made and damages sought against Ace and Mr. Beckerman as a result of the August 15, 2014 incident.

36.     All conditions precedent to filing this action have been performed or have occurred.

37. Nautilus seeks a judgment declaring that it does not have a duty to indemnify Ace or Mr. Beckerman under the Policy for the claims made and damages sought against Ace and Mr. Beckerman as a result of the August 15, 2014 incident.

38. Pursuant to the Policy's Designated Professional Services Exclusion included in the Commercial General Liability Coverage Form, the Policy expressly bars coverage for bodily injury due to the rendering of or failure to render any professional service.

39. Mr. Frank alleges that he contracted with Ace to perform a home inspection of his property.

40. Mr. Frank further alleges that Mr. Beckerman, while acting in the course and scope of his employment with Ace, conducted a home inspection and failed to identify the dangerous risk posed by the outdoor tankless water heater.

41. As a result of Ace's and Mr. Beckerman's alleged negligence relating to the home inspection, Mr. Frank and Mr. Bennett allege that they sustained severe and permanent injuries.

42. Therefore, the claims made by Mr. Frank and Mr. Bennett against Ace and Mr. Beckerman are due to the rendering of or failure to render any professional service.

43. Accordingly, the claims made by Mr. Frank and Mr. Bennett against Ace and Mr. Beckerman are expressly excluded by the Designated Professional Services Exclusion in the Commercial General Liability Coverage Form.

44. Pursuant to the insuring agreement of the Miscellaneous Professional Liability Coverage Form, the Policy's Miscellaneous Professional Liability Coverage only applies to claims first made against the insured and reported to Nautilus during the period of the policy.

45. The Policy was in effect from October 4, 2013 to October 4, 2014.

PD.19368119.1

46. Nautilus did not receive notice of Mr. Frank's claim until its receipt of the March 14, 2016 letter.

47. Therefore, Mr. Frank's claim was not first made and reported during the period of the policy.

48. Nautilus did not receive notice of Mr. Bennett's claim until May 13, 2016.

49. Therefore, Mr. Bennett's claim was not first made and reported during the period of the policy.

50. Additionally, the claims made by Mr. Frank and Mr. Bennett against Ace and Mr. Beckerman arise out of alleged bodily injuries resulting from the August 15, 2014 incident.

51. Thus, the exclusion for claims arising out of bodily injury in the Policy's Miscellaneous Professional Liability Coverage also applies to bar Professional Liability Coverage for the claims made by Mr. Frank and Mr. Bennett.

52. Moreover, the Policy's Miscellaneous Professional Liability Coverage includes, by endorsement, a Professional Services Exclusion, which excludes coverage for claims arising out of the actual or alleged rendering of or failure to render a professional service other than wind mitigation, including home inspections.

53. Again, the claims made by Mr. Frank and Mr. Bennett against Ace and Mr. Beckerman arise out of Ace's and Mr. Beckerman's alleged negligence relating to the home inspection conducted by Mr. Beckerman.

54. Accordingly, the Professional Services Exclusion in the Policy's Miscellaneous Professional Liability Coverage Form expressly excludes Professional Liability Coverage for the claims made by Mr. Frank and Mr. Bennett.

55. Thus, Nautilus seeks a judgment declaring that it does not have a duty to indemnify Ace or Mr. Beckerman under the Policy for the claims made and damages sought by Mr. Frank and Mr. Bennett as a result of the August 15, 2014 incident.

56. In addition to the foregoing provisions, Nautilus pleads all other conditions, terms, warranties, limits, definitions, and exclusions of the Policy that may also be found to be applicable.

57. Nautilus reserves the right to amend this Complaint for Declaratory Judgment as additional or more specific information becomes available.

**WHEREFORE,** Nautilus respectfully requests that this Honorable Court enter a judgment declaring the rights and obligations of the parties under the Policy, including but not limited to the following:

(a) Nautilus has no duty under the Policy to indemnify Ace or Mr. Beckerman for the claims made and damages sought by Mr. Frank and Mr. Bennett as a result of the August 15, 2014 incident; and

(b) Nautilus is entitled to any further relief the Court deems proper.

Dated this 25th day of July, 2016.

                                  **PHELPS DUNBAR LLP**

                                  /s/ Bret M. Feldman
                                Bret M. Feldman, Esq., Fla. Bar No. 370370
                                bret.feldman@phelps.com
                                Mallory H. Thomas, Esq., Fla. Bar No. 112212
                                thomasm@phelps.com
                                100 South Ashley Drive • Suite 1900
                                Tampa, Florida 33602-5311
                                Tel.: (813) 472-7550; Fax: (813) 472-7570
                                **Attorneys for Nautilus Insurance Company**